# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

**ALEJANDRO GONZALEZ-ALLER,**

> **Plaintiff,**

**v.**                                                    **Civ. No. 17-639 KK/SCY**

**GOVERNING BOARD, CENTRAL**
**NEW MEXICO COMMUNITY**
**COLLEGE** *et al.***,**

> **Defendants.**

## MEMORANDUM OPINION AND ORDER

On June 14, 2017, Plaintiff filed a nineteen-count Complaint under the Age Discrimination in Employment Act, Title VII, 42 U.S.C. § 1983, the New Mexico Whistleblower Protection Act, the New Mexico Human Rights Act, and New Mexico common law alleging that Defendants illegally discriminated against him based on his age and national origin and retaliated against him for complaining about the discrimination. This matter is before the Court on Defendants' Motions to Dismiss (Doc. 57) and for Summary Judgment (Doc. 58), filed on July 31, 2018, in which Defendants seek dismissal of or summary judgment as to each of Plaintiff's claims. [1] (Docs. 57,

---

[1] In his Response to Defendants' Motion for Summary Judgment, Plaintiff stipulated to the dismissal of five counts in his Complaint. (Doc. 69 at 1.) Plaintiff's remaining claims are: Count I (alleging discriminatory failure to hire in violation of the Age Discrimination in Employment Act, 29 U.S.C. §§ 621 *et seq.* ("ADEA")); Count II (alleging retaliatory failure to hire in violation of the ADEA); Count IV (alleging discriminatory failure to hire based on national origin in violation of Title VII of the Civil Rights Act of 1964 ("Title VII")); Count V (alleging retaliatory failure to hire in violation of Title VII); Count VII (alleging discriminatory failure to hire based on age in violation of the New Mexico Human Rights Act, N.M. Stat. Ann. §§ 28-1-1 *et seq.* ("NMHRA")); Count VIII (alleging retaliatory failure to hire based on protected opposition to age discrimination in violation of the NMHRA); Count X (alleging discriminatory failure to hire based on national origin in violation of the NMHRA); Count XI (alleging retaliatory failure to hire based on protected opposition to national origin discrimination in violation of the NMHRA); Count XIV (alleging deprivation of the Fourteenth Amendment right to equal protection under 42 U.S.C. § 1983); Count XV (alleging conspiracy to violate the Fourteenth Amendment under 42 U.S.C. § 1983); Count XVI (alleging unlawful conspiracy under 42 U.S.C. § 1985(3)); Count XVII (alleging breach of an implied employment contract); Count XVIII (alleging violation of the New Mexico Whistleblower Protection Act, N.M. Stat. Ann. §§ 10-16C-1 *et seq.* ("NMWPA")); and, Count XIX (alleging breach of the implied covenant of good faith and fair dealing). (Doc. 1 at 8-31.)

58.) Having reviewed the parties' submissions, the record, and the relevant law, and for the reasons that follow, the Court finds that Defendants' Motion to Dismiss should be GRANTED IN PART and DENIED IN PART, and that Defendants' Motion for Summary Judgment should be GRANTED IN PART and DENIED IN PART.

## I.  **FACTUAL HISTORY**[2]

Plaintiff Alejandro Gonzalez-Aller earned a bachelor's degree in math in 1986; in 1992 he earned a master's degree in math; in 1994 he earned a master's degree in nuclear engineering; and in 2001, he earned a Ph.D. in engineering.  (Doc. 69-12 at 1.)  Plaintiff was born in Spain in 1953.  (Doc. 58 at 29.)  From 2013 to 2016, Plaintiff applied for four full-time math instructor positions at Central New Mexico Community College ("CNM").[3]  This lawsuit arises from the fact that Plaintiff was not selected to fill any of these positions.  (Doc. 1 at ¶¶ 19, 27, 31, 42.)  In 2013, when he applied for the first position at issue in this lawsuit, Plaintiff had 23 years of teaching experience, including 17 years teaching at CNM as a part-time instructor.[4]  (*Id.* at 1-2.)  Plaintiff also taught at Northern New Mexico College, in Espanola, New Mexico, from 1992 to 2013, at which institution he held several positions, including associate professor of mathematics, dean of the math and science department, and chair of the math and science department.  (*Id.* at 1-2.)

CNM conducts its review of applications for full-time faculty positions in stages.  The first stage is a "minimum requirements" or first-level screen at which a hiring committee considers

---

[2] For purposes of the instant motions, the Court accepts facts undisputed by the parties as true and resolves disputed facts in favor of Plaintiff where he provides evidence to support his allegations.

[3] In January 2013, Plaintiff applied for position 0601542.  (Doc. 69-2.) In December 2013, Plaintiff applied for position 0601976.  (*Id.*)  In January 2015, Plaintiff applied for position 0602431.  (*Id.*)  Finally, in January 2016, Plaintiff applied for position 0602805.  (*Id.*)

[4] Plaintiff was employed as a part-time math instructor at Central New Mexico Community College ("CNM") from January 1996 until he retired from this position in 2013. (Doc. 1 at 3; Doc. 58 at 33.)  Before Plaintiff's retirement became effective, CNM rehired him in another part-time math instructor position, and, as of the commencement of this lawsuit, Plaintiff still held that position.  (Doc. 58 at 33; Doc. 69-7 at 2.)

whether the applicant possesses the essential job-related skills the position requires.  (Doc. 69-3 at 4; Doc. 69-7 at 5-7; Doc. 69-29 at 4.)  The second stage is a "preferences" or second-level screen at which the committee is to consider specified knowledge, skills, and abilities that add value to a candidate and make the candidate more competitive.  (*Id.*)  A candidate who passes the minimum requirements and preferences screens associated with a given position is eligible to be considered for the third stage interview by the hiring committee.  (Doc. 58 at 35.) Due to the high volume of applications CNM receives for each full-time teaching vacancy, not every qualified candidate receives an interview; instead, the hiring committee is instructed to interview candidates with the highest scoring preference screens.  (Doc. 58 at 37; Doc. 69-3 at 3-4; Doc. 69-5 at 3; Doc. 69-7 at 4-6.)  The committee interview format includes both questions and a teaching demonstration, and the committee picks the person (or persons) who perform best in their answers and teaching demonstration to forward to the dean as finalist(s).[5]  The dean performs a fourth stage interview of the finalist(s) before making a final hiring decision.[6]  (Doc. 69-3 at 4; Doc. 69-7 at 5-7; Doc. 69-29 at 4.)

Hiring committees are comprised of CNM faculty members who volunteer to participate.  (Doc. 69-5 at 2.)  The committees rate and recommend candidates, but ultimately, the dean is

---

[5]Rachel Black who served on hiring committees for two positions at issue in this case testified to the importance of the interview and teaching demonstration as follows:

| | |
|---|---|
| A: | We pick the best applications and then we interview those.  And we pick the person who performs the best. |
| Q: | In the – |
| A: | Interview. |
| Q | – demonstration, in the teaching demonstration during the interview. |
| A: | And the interview questions.  It's a combination of questions and lecture demo. |

(Doc. 69-5 at 3; Doc. 58 at 55; Doc. 69-45.)  Plaintiff named Ms. Black as a Defendant but stipulated to dismissal of the claims against her on July 3, 2018.  (Doc. 54.)

[6]However, Defendant Carman testified that to his knowledge Defendant Cornish does not conduct finalist interviews.  (Doc. 69-24 at 4.)  Also, Defendant Cornish testified that a search committee tracking form indicating that he conducted a "finalist interview" for position 0601976 was "not accurate."  (Doc. 69-29 at 5.)

empowered to make the final selection. (*Id.* at 4; Doc. 69-17 at 2.) Hiring committee members are instructed to consider each applicant, including internal applicants who are current CNM employees, based solely on the applicant's application materials and interview. (Doc. 69-5 at 3.) Applications from internal candidates are supposed to be screened as if the committee does not know the applicant. (Doc. 69-32.) During the screening process, committee members are not to consider their personal knowledge of an applicant, or student and peer evaluations of current CNM employees. (Doc. 69-5 at 3.) According to CNM's Employee Handbook, "[i]n filling job vacancies, preference will be given to current [CNM] employees when qualifications and experience are relatively equal in the judgment of management personnel who make the selections." (Doc. 69-3 at 4; Doc. 69-6 at 3, 4.) However, "[t]he offer of part-time employment is not to be presumed or construed as indicating any commitment to a full-time position, or to extend beyond the period of the initial terms of employment." (Doc. 69-6 at 5.)

### Position 0601542

On January 17, 2013, Plaintiff applied for position 0601542. (Doc. 69-2.) The minimum requirements for this position included a master's degree in math or a closely related field from an accredited institution, two years of recent experience teaching math at the post-secondary or secondary level, and demonstrated excellent written and verbal communication. (Doc. 58 at 39.) The job posting also indicated several preferences related to teaching experience and abilities and noted that the interview would include a teaching demonstration. (*Id.* at 39-40.) The hiring committee, of which Defendant Carman was one of ten members, interviewed Plaintiff for this position but he was not hired. (*Id.* at 37; Doc. 76 at 28.) Rich Calabro selected two applicants, both white, to fill this position—David Heddens, who was 45 years old, and Ella Sitkin, who was 62 years old. (Doc. 58 at 37, 46; Doc. 69-24 at 4; Doc. 76 at 28.)

**Position 0601976[7]**

On December 16, 2013, Plaintiff applied for position 0601976.  (Doc. 69-2.)  The record before the Court does not contain a copy of the job posting for this position; however, Defendant Cornish testified that Plaintiff was "qualified in the sense that he passed through the preferences screening and got an interview," and Plaintiff does not dispute this testimony.  (Doc. 69-29 at 5.) A hiring committee interviewed Plaintiff for this position, and he was one of three applicants the committee forwarded to Defendant Cornish for final consideration.  (Doc. 69-31.)  The committee members gave the first finalist, David Blankenbaker, a total interview score of 35; they gave Plaintiff a total interview score of 17; and they gave the third finalist a total interview score of 15. (Doc. 69-31.)  Defendant Cornish selected Mr. Blankenbaker, a 46-year-old white male, to fill the position.  (Doc. 69-26; Doc. 69-27 at 2; Doc. 69-29 at 4.)  When Mr. Blankenbaker declined the offer of employment, Defendant Cornish closed the position without selecting another applicant from the finalist pool.  (Doc. 69-29 at 4-5.)

**Position 0602431**

On January 19, 2015, Plaintiff applied for position 0602431.  (Doc. 69-2.)  Plaintiff passed the minimum requirements screen but not the preference screen for this position, and the hiring committee, of which Defendants Cornish and Carman were members, did not interview him.  (Doc. 58 at 51, 55; Doc. 69-2; Doc. 69-4.)  The minimum requirements for this position included a master's degree in math or a closely related field, and at least two years of teaching experience at the college level.  (Doc. 58 at 48.)  The preferences included a Ph.D. in math, and experience in

---

[7] Defendants did not address Plaintiff's claims based on position 0601976 *at all* in their summary judgment motion, though Plaintiff did address these claims in his response, and Defendants addressed them in a very cursory manner in their reply.  (Doc. 58; Doc. 69 at 24-25; Doc. 76 at 19.)  Although this would be sufficient grounds to deny Defendants any relief, upon the Court's review of the record before it, it appearing that summary judgment may be warranted for the reasons more fully discussed in section IV *infra*, Plaintiff is granted twenty days to file a surreply before the Court will consider summary judgment on his claims premised on Defendants' failure to hire him for position 0601976.

specified educational methods. (*Id.*) In his application for position 0602431, Plaintiff responded "Yes" to the question, "[d]o you possess a Ph.D. in Mathematics?" (*Id.* at 60.) However, his cover letter, resume, and transcripts reflected that he has a master's degree in math, a master's degree in nuclear engineering, and a Ph.D. in engineering. (Doc. 69-11 at 1; Doc. 69-12 at 1; Doc. 69-16 at 3.) A "preference screen" summary for this position indicated that Plaintiff's "degree claims" were "inaccurate." (Doc. 58 at 51.) Defendant Cornish selected two applicants to fill the position: Charles Mundy-Castle, a 40-year-old white male, and Kenneth Anglin, a 28-year-old white male. (Doc. 58 at 61-62; Doc. 67-7 at 5; Doc. 69-38.) Mr. Mundy-Castle has a master's degree in math, and Mr. Anglin has a master's degree in applied math. (Doc. 69-36; Doc. 69-28.) At the time, neither Mr. Mundy-Castle nor Mr. Anglin had a Ph.D. (*Id.*; Doc. 69-38.)

### Position 0602805

On January 14, 2016, Plaintiff applied for position 0602805. (Doc. 69-2.) The minimum requirements for this position included a master's degree in math, or in a closely related field with at least 18 credit hours of graduate-level math or statistics, and at least two years of teaching experience at the college level. (Doc. 69-42 at 2.) The listed preferences included a Ph.D. in math or statistics. (*Id.*) The hiring committee, of which Defendant Cornish was a member, did not interview Plaintiff for this position. (Doc. 69-2; Doc. 69-45.) An "Applicant List" attached to Plaintiff's summary judgment response indicates that Plaintiff "[d]id not meet preferred qualifications" for this position. (Doc. 69-43 at 1.) Lane McConnell, the applicant Defendant Cornish selected to fill it, was a 32-year-old white male. (Doc. 69-43 at 2; Doc. 69-33 at 2.) Mr. McConnell has a Ph.D. in applied mathematics. (Doc. 69-33 at 5.) At the time, Mr. McConnell's college-level teaching experience included six semesters as an instructor of record, and nine quarters as a teaching assistant. (*Id.*) He was employed as an instructor at UNM from August

2013 through January 5, 2016, the date he applied for position 0602805. (*Id.* at 8; Doc. 69-43 at 2.)

## II.    **DEFENDANTS' MOTION TO DISMISS**

Federal Rule of Civil Procedure 12 authorizes a court to dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). In deciding a motion to dismiss under Rule 12(b)(6), the Court must determine whether the plaintiff's complaint "contain[s] sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 677 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). In undertaking this analysis, the Court considers the complaint as a whole and construes all well-pled allegations in the light most favorable to the plaintiff. *Nakkhumpun v. Taylor*, 782 F.3d 1142, 1146 (10th Cir. 2015). "Well-pled" means that the allegations are "plausible, non-conclusory, and non-speculative." *Dudnikov v. Chalk & Vermilion Fine Arts, Inc.*, 514 F.3d 1063, 1070 (10th Cir. 2008). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. Courts "disregard conclusory statements and look only to whether the remaining . . . factual allegations plausibly suggest the defendant is liable." *Mocek v. City of Albuquerque*, 813 F.3d 912, 921 (10th Cir. 2015).

Defendants' Motion to Dismiss pertains to Defendants Cornish, Carman, and Manning in their individual capacities.[8] (Doc. 57 at 1.) To the extent Defendants' motion seeks to dismiss Plaintiff's Title VII claims against these Defendants, the motion will be denied as moot because,

---

[8] Defendant John Cornish is the dean of the mathematics department at CNM. (Doc. 69-29 at 2.) Defendant Thomas Manning has been employed by CNM since 2001—from 2001 to 2011, Mr. Manning was a human resources representative; from 2011 to 2017, he was a labor relations officer in which role he was the lead negotiator for collective bargaining and the primary point of contact for contract administrators; and in 2017 Mr. Manning became CNM's senior human resources director. (Doc. 58 at 4, 35.) Defendant Philip Carman was the associate dean of the math department at CNM until 2015. (Doc. 58 at 53.)

as Plaintiff's Complaint indicates and his Response confirms, he asserts his Title VII claims against Defendant CNM only.  (Doc. 1 at 11-13; Doc. 57 at 3-4; Doc. 70 at 2.)  To the extent Defendants' motion seeks to dismiss Plaintiff's NMWPA claims against these Defendants, however, the motion will be granted.  Although Plaintiff contends in his response that Defendant CNM "is the sole liability target" of his claims brought under this statute, in his Complaint Plaintiff's intended target is not so clear.  (*See* Doc. 1 at 30 ¶ 189 ("The retaliatory acts of *Defendants* constitute violations of the [NMWPA].") (emphasis added).)  Moreover, by his failure to make any substantive argument on this point, Plaintiff appears to concede the validity of Defendants' argument that the NMWPA "does not permit a public employee to assert a claim against a state officer in his or her individual capacity."  (Doc. 57 at 4 (quoting *Flores v. Herrera*, 2016-NMSC-033, ¶ 1, 384 P.3d 1070).)

In their motion, Defendants also seek dismissal of Plaintiff's Section 1983 claims against Defendant Manning on the ground that Plaintiff's Complaint does not sufficiently allege Defendant Manning's personal participation in, or direct personal responsibility for, the alleged deprivation of Plaintiff's constitutional rights.  (Doc. 57 at 4-5.)  In support of this argument, Defendants cite *Trujillo v. Williams*, 465 F.3d 1210, 1227 (10th Cir. 2006), for the proposition that "a defendant's direct personal responsibility for the claimed deprivation of a constitutional right must be established" before he may be held liable for such deprivation under Section 1983.[9]  *See also Bertolo v. Benezee*, 601 F. App'x 636, 638 (10th Cir. 2015)[10] (to state claim under Section

---

[9] In their reply brief, Defendants also cite to *Hern v. Crist*, 1987-NMCA-019, ¶ 8, 735 P.2d 1151, and New Mexico Rule of Civil Procedure 1.008(A)(2), for the proposition that the Court should dismiss *all* of Plaintiff's claims against Defendant Manning in his individual capacity.  (Doc. 77 at 3.)  Setting aside that Defendants improperly expanded their motion regarding Defendant Manning for the first time in their reply, neither the New Mexico Rules of Civil Procedure nor state case law interpreting those rules provide the standards by which a complaint filed in this Court must be judged.  Fed. R. Civ. P. 1, 81.

[10] Unpublished decisions are not binding precedent in the Tenth Circuit, but may be cited for their persuasive value.  *United States v. Austin*, 426 F.3d 1266, 1274 (10th Cir. 2005).

1983, plaintiff must allege that "each defendant personally participated" in a constitutional deprivation); *Nasious v. Two Unknown B.I.C.E. Agents, at Arapahoe Cty. Justice Ctr.*, 492 F.3d 1158, 1163 (10th Cir. 2007) ("[T]o state a claim in federal court, a complaint must explain what each defendant did to him or her; when the defendant did it; how the defendant's action harmed him or her; and, what specific legal right the plaintiff believes the defendant violated."). In response, Plaintiff points to several paragraphs of his Complaint in which he alleges wrongful conduct by "Defendants" and "all Defendants," which references, he argues, necessarily include Defendant Manning. (Doc. 70 at 2.) Plaintiff asserts that the absence of Defendant Manning's name in these paragraphs does not warrant dismissal of Plaintiff's claims against him based on *Trujillo*, for the simple reason that the terms "Defendants" and "all Defendants," construed in Plaintiff's favor, include Defendant Manning.

Had Plaintiff included any basic factual allegations regarding how Defendant Manning, in particular, was involved in "Defendants'" alleged wrongful conduct, the Court would be inclined to agree. In his complaint, however, Plaintiff does not even allege by whom Defendant Manning is or was employed, or his job title or general responsibilities, much less what specific actions he personally took to violate Plaintiff's Fourteenth Amendment right to equal protection. (*See generally* Doc. 1.) The sole allegation that identifies Defendant Manning separate and apart from the other defendants in the case merely states that he is a resident of Bernalillo County. (Doc. 1 at 7.) This is grossly insufficient to state a "plausible, non-conclusory, and non-speculative" claim that Defendant Manning personally participated in or had direct personal responsibility for Defendant CNM's hiring decisions regarding Plaintiff. Nonetheless, in the interest of judicial efficiency and to avoid a futile motion to amend, as discussed *infra* the Court grants Defendant

Manning summary judgment on Plaintiff's Section 1983 claims against him on the basis of qualified immunity, rendering moot Defendants' motion to dismiss these claims.

With regard to the remaining NMHRA claims against Defendant Manning, Defendants sought dismissal of these claims for the first time in their reply. (*Compare* Doc. 57 at 4-5 *with* Doc. 77 at 3.) It would be unfair to permit Defendants to sandbag Plaintiff by granting dismissal based on a request raised for the first time in a reply. There is no reason why Defendants could not have made this argument in their opening brief, and their failure to do so is sufficient reason to deny their motion. Nonetheless, the Court notes that Plaintiff's Complaint is utterly devoid of allegations specific to Defendant Manning and in this regard apparently fails to state any claim on which relief could be granted. This matter is scheduled for trial early next year, and in the interest of judicial efficiency, the Court directs Plaintiff to file a surreply opposing dismissal of the NMHRA claims against Defendant Manning no later than 20 days after entry of this Memorandum Opinion and Order. *See Doebele v. Sprint/United Mgmt. Co.*, 342 F.3d 1117, 1139 n.13 (10th Cir. 2003) (when movant includes new arguments in its reply brief, court must either permit nonmovant to file surreply or disregard new arguments); *S.E.C. v. Goldstone*, 2014 WL 6065611 at *2 (D.N.M. 2014) ("A surreply is appropriate and should be allowed where new arguments are raised in a reply brief."). If Plaintiff does not surreply or otherwise seek timely relief from dismissal of these claims, the Court will consider this as Plaintiff's consent to dismissal and will enter an order dismissing Plaintiff's NMHRA claims as against Defendant Manning.

### III. DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

#### A. Legal Standards Governing Summary Judgment

"Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no

genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Jones v. Kodak Med. Assistance Plan*, 169 F.3d 1287, 1291 (10th Cir. 1999); Fed. R. Civ. P. 56(a). "A dispute is genuine when the evidence is such that a reasonable jury could return a verdict for the nonmoving party, and a fact is material when it might affect the outcome of the suit under the governing substantive law." *Bird v. W. Valley City*, 832 F.3d 1188, 1199 (10th Cir. 2016). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Atl. Richfield Co. v. Farm Credit Bank of Wichita*, 226 F.3d 1138, 1148 (10th Cir. 2000). The content or substance of the evidence submitted for or against a motion for summary judgment must be admissible under the applicable rules of evidence. *Argo v. Blue Cross & Blue Shield of Kan, Inc.*, 452 F.3 1193, 1199 (10th Cir. 2006); *Gross v. Burggraf Constr. Co.*, 53 F.3d 1531, 1541 (10th Cir. 1995) (unless an exception applies and the evidence meets the reliability and trustworthiness requirement, hearsay testimony cannot be considered relevant to a motion for summary judgment).

The movant bears the initial burden of demonstrating the absence of a genuine issue of material fact and thus its entitlement to judgment as a matter of law. *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670-71 (10th Cir. 1998). If the movant carries this initial burden, the burden shifts to the nonmovant "to go beyond the pleadings and set forth specific facts . . . from which a rational trier of fact could find for the nonmovant." *Id.* at 671. If the nonmovant demonstrates a "genuine dispute" as to material facts, the Court views those facts in the light most favorable to him. *Ricci v. DeStefano*, 557 U.S. 557, 586 (2009). However, "a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

**B.  Plaintiff's Employment Discrimination Claims**

## 1. <u>Exhaustion of Administrative Remedies</u>

A plaintiff's right to pursue a statutory employment discrimination claim in federal court is "generally limited by the scope of the administrative investigation that can reasonably be expected to follow the charge of discrimination submitted to the EEOC." *Jones v. U.P.S., Inc.*, 502 F.3d 1176, 1186 (10th Cir. 2007).

> [T]he charge must contain facts concerning the discriminatory and retaliatory actions underlying each claim; this follows from the rule that each discrete incident of alleged discrimination or retaliation constitutes its own unlawful employment practice for which administrative remedies must be exhausted.

*Id.* (citations and quotation marks omitted). Filing a charge of discrimination with the EEOC identifying the bases of a plaintiff's employment discrimination claims is a condition precedent to suit, and failure to do so "permits the employer to raise an affirmative defense of failure to exhaust." *Lincoln v. BNSF Ry.*, 900 F.3d 1166, 1185 (10th Cir. 2018).

Plaintiff's Complaint references four instances in which he applied for a full-time math instructor position at CNM but was not selected. Plaintiff's Complaint alleges, and the record reflects, that Plaintiff filed two charges of discrimination with the EEOC: Charge No. 543-2015-1151 and Charge No. 543-2017-00237. (Doc. 1 at 2-3; Doc. 58 at 50; Doc. 69-7; Doc. 69-40 at 1; Doc. 76 at 27.) The charge ending in 1151 concerned positions 0601542 and 0602431 and asserted discrimination on the bases of age and national origin. (Doc. 58 at 50; Doc. 69-7.) The charge ending in 00237 concerned position 0602805 and asserted discrimination on the bases of age and national origin as well as unlawful retaliation. (Doc. 69-43; Doc. 69-1 at 4; Doc. 69-43 at 1; Doc. 76 at 27.)

In their motion, Defendants argue that the Court should grant them summary judgment on Plaintiff's retaliation claims under the ADEA, Title VII, and the NMHRA for failure to exhaust administrative remedies regarding positions 0601542 and 0602431. (Doc. 58 at 16-17.) In his

response to Defendants' motion, Plaintiff concedes that he did not exhaust his administrative remedies with respect to his retaliation claims regarding "any application process other than the 2016 process," *i.e.*, the process regarding position 0602805.  (Doc. 69 at 32.)  As such, the Court will grant Defendants' motion for summary judgment on Plaintiff's retaliation claims regarding positions 0601542, 0601976, and 0602431.

### 2. The *McDonnell Douglas* Framework

In the absence of direct evidence of discrimination or retaliation, courts analyze employment discrimination and retaliation claims under Title VII, the ADEA, and the NMHRA, using the basic burden-shifting framework the United States Supreme Court established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973).  *See O'Connor v. Consol. Coin Caterers Corp.*, 517 U.S. 308, 311 (1996) (assuming, without deciding, that circuit courts' application of *McDonnell Douglas* framework to ADEA claims is appropriate); *Jones v. Okla. City Pub. Schs.*, 617 F.3d 1273, 1278-79 (10th Cir. 2010) (Tenth Circuit will continue to apply *McDonnell Douglas* framework to ADEA claims despite *Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 174 (2009), in which Supreme Court noted that it "has never held that [*McDonnell Douglas*] burden-shifting framework applies to ADEA claims"); *Smith v. FDC Corp.*, 787 P.2d 433, 436-37 (N.M. 1990) ("The evidentiary methodology adopted [in *McDonnell Douglas*] provides guidance for proving a violation of the [NMHRA].");  *Lounds v. Lincare, Inc.*, 812 F.3d 1208, 1233-34 (10th Cir. 2015) (applying "the familiar three-part *McDonnell Douglas* framework" to Title VII retaliation claims).

Under the *McDonnell Douglas* framework, the plaintiff bears the initial burden of establishing a prima facie case.  *McDonnell Douglas Corp.*, 411 U.S. at 802.  "The prima facie case serves an important function in the litigation: it eliminates the most common

nondiscriminatory reasons for the plaintiff's rejection[,]" *Texas Department of Community Affairs v. Burdine*, 450 U.S. 248, 253-54 (1981), "including lack of qualifications and an absence of a vacancy." *Beams v. Norton*, 256 F. Supp.2d 1203, 1213-14 (D. Kan. 2003); *see Int'l Bhd. of Teamsters v. United States*, 431 U.S. 324, 358 n.44 (1977) (*McDonnell Douglas* test is important because it requires plaintiff to offer evidence that "his rejection did not result from the two most common legitimate reasons on which an employer might rely to reject an applicant:  an absolute or relative lack of qualifications or the absence of a vacancy in the job sought"). "The plaintiff's articulation of his prima facie case may vary depending on the nature of the claim." *Conroy v. Vilsack*, 707 F.3d 1163, 1171 (10th Cir. 2013).  However, the critical prima facie inquiry in all cases is whether the plaintiff has demonstrated that the adverse employment action occurred under circumstances giving rise to an inference of unlawful discrimination or retaliation.  *Id.*; *United States of America v. Dental Dreams, L.L.C.*, 307 F. Supp.3d 1224, 1245 (D.N.M. 2018).

If the plaintiff establishes a prima facie case of discrimination or retaliation, the burden shifts to the defendant, who is then required to articulate some legitimate, nondiscriminatory or nonretaliatory reason for its challenged decision/action.  *McDonnell Douglas Corp.*, 411 U.S. at 802-03; *Lounds*, 812 F.3d at 1234.  If the defendant articulates such a reason, the burden shifts back to the plaintiff, who must then demonstrate that the stated reason for the decision/action "was in fact pretext."  *McDonnell Douglas Corp.*, 411 U.S. at 804.

    a.  **Plaintiff Has Not Met his Burden of Establishing a Prima Facie Case of Retaliation Based on Defendants' Failure to Hire Him for Position 0602805**[11]

---

[11] Because Plaintiff concedes that he did not exhaust administrative remedies as to his statutory retaliation claims based on positions 0601542, 0601976, and 0602431, the Court's analysis is limited to position 0602805.

The ADEA and Title VII prohibit an employer from taking adverse employment actions against an employee or applicant for employment because he has opposed any employment practice made unlawful by those Acts. 29 U.S.C. § 623(d) (ADEA); 42 U.S.C. § 2000e-3(a) (Title VII). Similarly, under the NMHRA, it is unlawful for an employer to take an adverse employment action against any person who has opposed a discriminatory practice or who has filed a complaint related to such a practice. N.M. Stat. Ann. § 28-1-7(I)(2). To establish a prima facie case of retaliation, a plaintiff must show that: (1) he engaged in protected opposition to discrimination; (2) he suffered an adverse employment action; and, (3) a causal connection existed between the protected activity and the adverse employment action. *Hinds v. Sprint/United Mgmt. Co.*, 523 F.3d 1187, 1202 (2008) (ADEA); *Ward v. Jewell*, 772 F.3d 1199, 1202 (10th Cir. 2014) (Title VII); *Juneau v. Intel Corp.*, 2006-NMSC-002, ¶ 23, 127 P.3d 548, 554-55 (NMHRA). Regarding the third element, a causal connection may be inferred when the adverse employment action closely follows the protected activity in time. *Ward*, 772 F.3d at 1203. In the Tenth Circuit, an adverse employment action occurring six weeks after the protected activity satisfies the "closely follows" standard, whereas a lapse of three months between the protected activity and the adverse employment action, standing alone, does not. *Anderson v. Coors Brewing Co.*, 181 F.3d 1171, 1179 (10th Cir. 1999) (declining to decide whether two-month lapse between protected activity and adverse employment action satisfies the "closely follows" standard). When the adverse employment action does not closely follow the protected activity in time, the plaintiff must present other evidence tying the adverse employment action to the protected activity. *Ward*, 772 F.3d at 1203. This evidence "must be based on more than mere speculation, conjecture, or surmise" and must support an inference that, but for the plaintiff's protected activity, the employer would not have taken the adverse employment action. *Id.*

New Mexico's appellate courts have neither accepted nor rejected the Tenth Circuit's "closely follows" standard in cases where the plaintiff relies solely on temporal proximity to demonstrate causation. *Cf. Juneau*, 2006-NMSC-002, ¶ 22, 127 P.3d at 554 (discussing but declining to apply Tenth Circuit's temporal proximity standard to NMHRA retaliation claims because plaintiff "presented other direct evidence of causation, and did not rely on temporal proximity alone"); *see generally Ocana v. Am. Furniture Co.,* 2004–NMSC–018, ¶ 23, 91 P.3d 58, 68 ("When considering claims under the NMHRA, we may look at federal civil rights adjudication for guidance in interpreting the NMHRA. Our reliance on the methodology developed in the federal courts, however, should not be interpreted as an indication that we have adopted federal law as our own.") (internal quotation marks and citations omitted). Whether the Tenth Circuit's temporal proximity standard applies to a prima facie case of retaliation under the NMHRA is thus unresolved, and neither side addressed this issue in their briefing. *But see, e.g., Laul v. Los Alamos Nat'l Labs.*, 309 F. Supp.3d 1119, 1153-54 (D.N.M. 2016) (applying Tenth Circuit temporal proximity standard to Title VII and NMHRA retaliation claims without comment); *Otero v. N.M. Corr. Dep't*, 640 F. Supp.2d 1346, 1357 (D.N.M. 2009) (same).

The Court finds it most likely that the New Mexico Supreme Court would elect to apply the Tenth Circuit's temporal proximity standard to retaliation claims under the NMHRA where the plaintiff relies solely on temporal proximity to establish causation, and will do so here, because the reasoning underpinning the standard is applicable to both federal and state law retaliation claims.

> Underlying the law's recognition that a sufficient causal inference may arise from adverse action shortly following protected activity is the notion that such action typically is the product of negative emotions such as anger or resentment. Yet, our ability to draw such a causal inference from an employer's adverse action diminishes over time because we may reasonably expect (as a matter of common

sense) that the embers of anger or resentment that may have been inflamed by the employee's protected activity . . . would cool over time.

*Conroy*, 707 F.3d at 1182 (citations omitted).

Turning to the facts of this case, Plaintiff has clearly satisfied the first two elements of a prima facie retaliation case. It is undisputed that on September 22, 2015, Plaintiff engaged in the protected activity of filing a charge of discrimination with the EEOC alleging age and national origin discrimination. (Doc. 58 at 50.) It is further undisputed that on January 14, 2016, Plaintiff applied for position 0602805, for which position he was neither interviewed nor hired, thereby suffering an adverse employment action. (Doc. 69-2.) Defendants argue, however, that owing to the lapse of approximately four months[12] between the filing of Plaintiff's EEOC charge and Plaintiff's non-selection for position 0602805, he cannot satisfy the third element of his prima facie case. (Doc. 58 at 19.) In response to this argument, Plaintiff argues that he does not rely solely on the temporal proximity between his first EEOC charge and his non-selection for the position to show a causal connection between them. (Doc. 69 at 33.) Rather, he relies on evidence that Defendants' proffered reasons for not selecting him for position 0602805 were pretextual. (*Id.*); *see Juneau*, 2006-NMSC-002, ¶ 25, 127 P.3d at 555 ("[M]uch of the evidence that establishes a genuine issue of fact for causation also demonstrates a factual dispute as to pretext."). In particular, he asserts that the only reason his preference screen scores dropped for position 0602805, as compared to his preference screen scores for positions 0601542 and 0601976, is that he filed a charge of discrimination in the intervening time period. (Doc. 69 at 29.)

---

[12] The record does not indicate the precise lapse of time between Plaintiff's first EEOC charge and Defendants' rejection of his application for position 0602805, because it does not indicate when Defendants decided not to interview Plaintiff for the position. However, Defendants cannot have rejected Plaintiff's application for position 0602805 before he submitted it, and thus, the absolute minimum lapse of time between the charge and the rejection of Plaintiff's application, assuming Defendants rejected it instantly, is three months and 23 days.

The record evidence does not support Plaintiff's assertion. Unlike position 0602805, position 0601542 did not have the preferred qualification of a Ph.D. in mathematics, and there is no evidence that position 0601976 did, either.[13] This undisputed change in the preferred qualifications is an objective, non-retaliatory reason for the change in Plaintiff's scores. Another objective, non-retaliatory reason for the change is the addition of several supplemental questions regarding preferred qualifications to the application for position 0602805 (and for position 0602431, for which Plaintiff also received a lower preferences score). (*Compare* Doc. 69-20 at 3 *and* Doc. 69-30 at 3 *with* Doc. 69-33 at 5-6 *and* Doc. 69-35 at 3.) Defendant Carman testified that these questions were "tied to the preferences so that . . . applicants would . . . directly address those preferences. So it would make it more apparent to us whether or not – to what degree the person met those preferences." (Doc. 58 at 53.) Plaintiff has presented no evidence to dispute this testimony.[14] In sum, Plaintiff has not submitted evidence from which a reasonable fact-finder could infer a causal connection between Plaintiff's filing of his first EEOC charge and Defendants' failure to interview him for position 0602805. He has therefore failed to establish a prima facie case of retaliation. Accordingly, Defendants are entitled to summary judgment on Plaintiff's ADEA, Title VII, and NMHRA retaliation claims.

b. **Plaintiff Has Met His Burden of Establishing a Prima Facie Case of Age and National Origin Discrimination Based on Defendants' Failure to Hire Him for Positions 0601542, 0602431, and 0602805**

The ADEA and the NMHRA provide that it is unlawful for an employer to refuse to hire an individual because of his age. 29 U.S.C. § 623(a)(1); N.M. Stat. Ann. § 28-1-7(A). Both

---

[13] Though the record does not include the job posting for position 0601976, the application for this position includes a supplemental question regarding whether the applicant has a master's degree in math, but not whether the applicant has a Ph.D. in math. (Doc. 69-30 at 3.)

[14] Also, the Court notes that the hiring committee members and other applicants for positions 0601542 and 0601976 were not identical to the hiring committee members and other applicants for position 0602805. (Doc. 58 at 42-43; Doc. 69-25; Doc. 69-28; Doc. 69-43; Doc. 69-45; Doc. 76 at 28.)

statutes limit their protections against age discrimination to individuals who are at least 40 years old. 29 U.S.C. § 631(a); *Cates v. Regents of N.M. Inst. of Mining & Tech.*, 954 P.2d 65, 70 (N.M. 1998). A plaintiff must "establish that age was the 'but-for' cause of the employer's adverse action" to prevail on an age discrimination claim. *Gross*, 557 U.S. at 176. To establish a prima facie case of employment discrimination based on age, the plaintiff must demonstrate that: (1) he was at least 40 years of age; (2) he suffered an adverse employment action; (3) he was qualified for the position at issue; and, (4) he was treated less favorably than others substantially younger than him. *O'Connor*, 517 U.S. at 312-13; *Jones*, 617 F.3d at 1279 (quoting *Sanchez v. Denver Pub. Sch.*, 164 F.3d 527, 532 (10th Cir. 1998)); *see generally McDonnell Douglas Corp.*, 411 U.S. at 802 (stating elements required to establish prima facie case of discrimination under Title VII); 29 U.S.C. § 631(a).

Title VII and the NMHRA prohibit an employer from refusing to hire an individual because of his national origin. 42 U.S.C. § 2000e-2(a)(1); N.M. Stat. Ann. § 28-1-7(A). To establish a prima facie case of employment discrimination based on national origin, a plaintiff must show that: (1) he belongs to a class protected by statute; (2) he suffered an adverse employment action; (3) he was qualified for the position at issue; and, (4) he was treated less favorably than others not in the protected class. *Sanchez*, 164 F.3d at 531-32; *Garrison*, 428 F.3d at 937.

Plaintiff has established a prima facie case of age and national origin discrimination based on Defendants' failure to hire him for the three positions addressed in Defendants' summary judgment briefing. When he applied for these three positions, Plaintiff was between the ages of 59 and 62 years and thus unquestionably within the class of persons protected from age discrimination in employment under the ADEA and the NMHRA. (Doc. 58 at 29.) Further, Plaintiff's nation of origin is Spain, and he closely identifies with Mexican culture in his familial

and social affiliations. (*Id.* at 29-30.)  These traits bring Plaintiff within the class of persons that Title VII and the NMHRA protect from national origin discrimination.  *See* 29 C.F.R. § 1606.1 (defining "national origin discrimination" under Title VII as "the denial of equal employment opportunity because of an individual's . . . place of origin; or because an individual has the physical, cultural or linguistic characteristics of a national origin group"); *see Garcia v. Hatch Valley Pub. Sch.*, 2018-NMSC-020, ¶ 13, — P.3d — (NMHRA does not "permit[] discrimination between Hispanics and non-Hispanics in the workplace").

Defendants do not dispute that the failures to hire Plaintiff for the positions at issue constitute adverse employment actions within the meaning of Title VII, the ADEA, and the NMHRA.  (*See generally* Docs. 58, 76.)  It is also undisputed that Plaintiff satisfied the minimum requirements for each of these positions.  (Doc. 69-3 at 5); *see E.E.O.C. v. Horizon/CMS Healthcare Corp.*, 220 F.3d 1184, 1194 (10th Cir. 2000) (plaintiff satisfies "her prima facie burden of showing she is qualified by presenting some credible evidence that she possesses the objective qualifications necessary to perform the job at issue").  Finally, it is undisputed that, except for Ella Sitkin, who was 62 years old when she was selected to fill position 0601542,[15] the other successful candidates for the relevant positions were significantly younger than Plaintiff, white, and not Hispanic.  (Doc. 58 at 37, 46, 61-62; Doc. 69-7 at 5; Doc. 69-27 at 2; Doc. 69-33 at 2; Doc. 69-38 at 1.)  In sum, Plaintiff has established a prima facie case of age and national origin discrimination as to positions 0601542, 0602431, and 0602805.

### c.  <u>Defendants' Proffered Reasons for Not Hiring Plaintiff and Plaintiff's Evidence of Pretext</u>

---

[15] Plaintiff acknowledges that he does not have any viable claims of age discrimination arising from the selection of Ms. Sitkin, one of the two successful candidates chosen to fill position 0601542.  (Doc. 69 at 22.)  However, he does maintain age discrimination claims arising from the selection of Mr. Heddens, the other candidate selected for that position.  (*Id.*)

In the second part of the *McDonnell Douglas* framework, the employer's burden is satisfied if it explains what it has done or produces evidence of legitimate non-discriminatory reasons for its actions. *E.E.O.C. v. Flasher Co., Inc.*, 986 F.2d 1312, 1317 (10th Cir. 1992). "This burden is one of production, not persuasion; it 'can involve no credibility assessment.'" *Reeves v. Sanderson Plumbing Prod., Inc.*, 530 U.S. 133, 142 (2000). Indeed, "[t]he relevant inquiry is not whether the employer's proffered reasons were wise, fair or correct, but whether it honestly believed those reasons and acted in good faith upon those beliefs." *Lobato v. N.M. Env. Dept.*, 733 F.3d 1283, 1289 (10th Cir. 2013). Requiring the employer to articulate the precise reasons for its actions effectively gives Plaintiff notice of these reasons so that he has a fair opportunity to show, at the third stage of the analysis, that the reasons are a pretext for an illegal discriminatory motive. *Flasher Co., Inc.*, 986 F.2d at 1318.

To demonstrate a genuine issue of material fact regarding whether an employer's stated reason for an adverse employment action is pretextual, a plaintiff must present evidence showing that the employer's proffered reason is "so incoherent, weak, inconsistent, or contradictory that a rational fact finder could conclude that the reason is unworthy of belief." *Hinds*, 523 F.3d at 1197 (alterations omitted). Although employers are entitled to rely on subjective criteria in making employment decisions, the use of subjective criteria can, under some circumstances, give rise to an inference of pretext. *Garrett v. Hewlett-Packard Co.*, 305 F.3d 1210, 1217-18 (10th Cir. 2002). Courts recognize that there are some positions that require abilities that cannot be fully measured by objective standards and employers must be given adequate leeway to use subjective criteria in their decision making. *Bauer v. Bailar*, 647 F.2d 1037, 1046 (10th Cir. 1981). However, insofar as the use of subjective criteria "provides an opportunity for unlawful discrimination," an employer should articulate these criteria with "reasonable specificity." *Id.*

Neither the ADEA nor Title VII requires employers to give preferential treatment to members of a protected class.[16] *See Branson v. Price River Coal Co.,* 853 F.2d 768, 772 (10th Cir.1988) ("The ADEA does not require employers to accord members of the protected class preferential treatment, but only that they treat age neutrally."); *Burdine*, 450 U.S. at 259 (Title VII does not require employer to restructure its employment practices to maximize the number of minorities hired). Evidence that the plaintiff was as qualified as, or more qualified than, a successful applicant is insufficient, standing alone, to prove pretext. *Sanchez v. Philip Morris Inc.*, 992 F.2d 244, 248 (10th Cir. 1993) (although employer's selection of less qualified candidate may reflect poor business judgment, standing alone, it does not demonstrate pretext). It is not the Court's role to determine "whether an employer acted prudently or imprudently in its hiring decisions." *Id.* "Mere conjecture that the employer's explanation is a pretext for intentional discrimination is an insufficient basis for denial of summary judgment." *Laul v. Los Alamos Nat'l Labs.*, 714 F. App'x 832, 839 (10th Cir. 2017).

## Position 0601542

A hiring committee that included Defendant Carman interviewed Plaintiff for position 0601542 in April 2013.[17] (Doc. 69 at 23; Doc. 69-2; Doc. 69-7 at 4; Doc. 69-14; Doc. 76 at 28.) Defendants' proffered "legitimate business reason[] for not hiring Plaintiff" is that he "conducted his teaching demonstration and interview poorly, which prevented him from being offered the position." (Doc. 76 at 17.) In support of this assertion, Defendants rely on Defendant Manning's testimony that Plaintiff was not hired for this position because he did not "pass" the interview.

---

[16] The Court will also apply this basic principle to the NMHRA, the parties having pointed to no principled reason for the Court to do otherwise. *Ocana*, 91 P.3d at 68.

[17] However, the record evidence indicates that Defendant Carman only participated in the first-level minimum requirements screen for this position. (Doc. 76 at 28.)

(Doc. 58 at 37.)[18] Defendants also rely on the deposition testimony of Alex Acuna, a member of the hiring committee for position 0601542, that Plaintiff's teaching demonstration was "mediocre," that Plaintiff stood in front of the board "a lot," covering what he was explaining, that Mr. Acuna could not hear what Plaintiff was saying because he did not project his voice well, and that Mr. Acuna did not see Plaintiff use technology. (Doc. 59 at 5.) The following additional exchange occurred at Mr. Acuna's deposition:

> Q.   And so would it be your testimony, Mr. Acuna, that [Plaintiff] is qualified to be a full-time instructor at CNM in math?
> A.   If I base myself on the teaching demonstration I would say no.

(*Id.*) Although Defendants did not cite to this, Plaintiff's own testimony corroborates that during the relevant time frame, Mr. Acuna informed him that other members of the interview committee also complained that they could not hear him during his teaching demonstration because he was not speaking loudly enough.[19] (Doc. 69-15 at 2, 9.) That Plaintiff did not do well in his teaching demonstration and therefore did not "pass" the interview is a legitimate, non-discriminatory reason for Defendants' decision not to hire him for this position.

In support of his argument that Defendants' proffered reason for not hiring him for position 0601542 is pretextual, Plaintiff first challenges Defendant Manning's testimony based on an insufficient foundation and lack of personal knowledge. (Doc. 69 at 3-4.) And rather than lay a foundation, Defendants appear to concede this point in their reply. (Doc. 76 at 3-4.) Refuting Mr. Acuna's testimony concerning his teaching demonstration, Plaintiff relies on his own deposition

---

[18] Defendants also proffer as an "undisputed fact" that "Plaintiff was not selected for the full-time instructor position because his interview and his classroom demonstration were not as good as those of the applicants selected." (Doc 58 at 5, ¶ 11.) However, they fail to produce admissible or relevant evidence in support of this alleged undisputed fact, and instead rely solely on Defendant Manning's deposition testimony concerning hearsay statements by unidentified applicants selected for an unidentified position for which Plaintiff apparently received no interview. (*Id.* (citing Defendants' Exhibit C, Manning Deposition page 170, ln. 18-25.))

[19] Plaintiff's testimony implies that Mr. Acuna did not believe these alleged complaints.

testimony that, after his interview for this position, Mr. Acuna told him he "did a very good lecture demonstration."[20]  (Doc. 69 at 23; Doc. 69-15 at 2-3.)  Defendants contend that the Court cannot rely on this testimony to deny summary judgment because it is "self-serving."  (Doc. 76 at 7.)  However, the self-serving nature of sworn testimony is not a proper basis for disregarding it on summary judgment.  "So long as an affidavit is based upon personal knowledge and set[s] forth facts that would be admissible in evidence, it is legally competent to oppose summary judgment, irrespective of its self-serving nature."  *Sanchez v. Vilsack*, 695 F.3d 1174, 1180 (10th Cir. 2012) (internal citation and quotation marks omitted).  Further, although Plaintiff's testimony about Mr. Acuna's statement would ordinarily be hearsay, here this appears not to be the case, because Mr. Acuna was a CNM employee on the hiring committee in question and his alleged statement was made "on a matter within the scope of that relationship and while it existed," which would make it a non-hearsay opposing party's statement pursuant to Federal Rule of Evidence 801(d)(2)(D).  *See Jaramillo v. Colo. Jud. Dep't*, 427 F.3d 1303, 1314 (10th Cir. 2005) ("[T]o qualify as an admission of a party opponent, the speaker must be involved in the decisionmaking process affecting the employment action involved.").

Also, there is some circumstantial support in the record for Plaintiff's testimony regarding Mr. Acuna's prior inconsistent statement.  As noted above, at his deposition Mr. Acuna testified that Plaintiff's teaching demonstration during his interview for position 0601542 was mediocre.

---

[20] Plaintiff also relies on Mr. Acuna's "interview notes" from 2013 which, Plaintiff argues, create a genuine issue of fact as to whether Plaintiff performed well in his interview.  (Doc. 69 at 23; Doc. 69-14.)  However, Mr. Acuna's notes neither support nor contradict his testimony regarding Plaintiff's teaching demonstration.  (Doc. 69-14.)  The only qualitative comments in the notes are the words "to[o] confusing" at the bottom of the box regarding the teaching demonstration, and the word "good" in the box regarding Plaintiff's answer to the first interview question.  (*Id.*)  These comments do not provide enough information to allow a reasonable factfinder to infer whether Plaintiff's interview performance was either "very good" or "mediocre."

Mr. Acuna also testified about Plaintiff's performance at his teaching demonstration during his interview for position 0601976. (Doc. 69-37 at 2.)

> Q: Did [Plaintiff] do a better job than 2013?
> A: Not really.
> Q: Still mediocre?
> A: It's because he didn't listen to my – I did tell them [sic] the recommendations. . . . I did talk to him like you should improve. Yeah. He just don't [sic] listen to me.
> Q: He didn't listen to you?
> A: Yeah.
> Q: And what did you tell him?
> A: I told him like, you know, like, "You should, you know, don't block the view. You know, speak louder." That's basically it.
> Q: And you're saying he didn't follow that advice?
> A: Yeah.

(*Id.*) In short, Mr. Acuna testified that Plaintiff's teaching demonstration for position 0601976 was flawed in the same way his demonstration for position 0601542 was flawed.

However, an "interview summary matrix" for position 0601976 indicates that Mr. Acuna rated Plaintiff's performance at his interview for position 0601976 as a "5," which appears to have been the highest score available; certainly, no interviewer gave any candidate a score higher than "5," and Mr. Acuna only gave one other candidate a "5," *i.e.*, Mr. Blankenbaker, the candidate to whom the position was ultimately offered.[21] (Doc. 69-31.) As such, Mr. Acuna's criticism of Plaintiff's performance at his interview for position 0601976 appears inconsistent with the score he gave that performance, which score suggests that Plaintiff performed very well. This, in turn, indirectly supports Plaintiff's testimony about Mr. Acuna's praise of his lecture demonstration during his interview for position 0601542, because Mr. Acuna testified that the quality of Plaintiff's lecture demonstrations for both positions was essentially the same. For these reasons, the Court finds that Plaintiff's testimony about Mr. Acuna's praise of his lecture demonstration during his interview for position 0601542 is sufficient to create a genuine issue of material fact

---

[21] The Court was unable to locate an interview summary matrix for position 0601542 in the record.

regarding whether Defendants' proffered reason for not hiring him for the position is pretextual.[22]

The Court further finds that this evidence of pretext, in combination with Plaintiff's prima facie case of age and national origin discrimination, is sufficient to show a genuine issue of material fact regarding whether Defendants refused to hire Plaintiff for position 0601542 because of his age and national origin in violation of the ADEA, Title VII, and the NMHRA. *Jones*, 617 F.3d at 1280 (plaintiff's prima facie case combined with sufficient evidence to find employer's asserted justification is false "may permit the trier of fact to conclude that the employer unlawfully discriminated"); *Bryant v. Farmers Ins. Exchange*, 432 F.3d 1114, 1125 (10th Cir. 2005) ("Evidence tending to show pretext permits an inference that the employer acted for discriminatory reasons.") The Court will therefore deny Defendants' motion for summary judgment as to these claims.[23]

## Position 0602431

A hiring committee that included Defendants Cornish and Carman declined to interview Plaintiff for position 0602431.[24] (Doc. 58 at 55; Doc. 69-2 at 1.) According to Defendant Cornish,

---

[22] While Defendants very well may have additional evidence supporting their position in the form of documents and/or testimony from the other hiring committee members, they have relied exclusively on Mr. Acuna's testimony in their motion -- having chosen not to reply to Plaintiff's challenge to Defendant Manning's testimony on the grounds that he lacks personal knowledge. And because Plaintiff has demonstrated a genuine issue of material fact concerning the truth of Mr. Acuna's testimony, summary judgment is precluded.

[23] In light of this determination, the Court need not address Plaintiff's many other arguments supporting his claim that Defendants' proffered reason for not hiring him for position 0601542 is pretextual. However, because it could also be offered as direct evidence of discrimination, the Court will briefly address Plaintiff's testimony that Mr. Acuna told him that hiring committee members Jason Terry and Kevin Leith did not want to hire him because he is Hispanic. (Mr. Acuna denied having made this statement at his deposition. (Doc. 59 at 5).) While Mr. Acuna's alleged statement may be non-hearsay under Rule 801(d)(2)(D), on the current record there is no evidence that the statement is based on Mr. Acuna's personal knowledge, as it must be to be admissible. Fed. R. Evid. 602. As such, on the present record, the Court is unwilling to rely on Plaintiff's testimony about the alleged statement in making any determinations in this Memorandum Opinion and Order. *Argo*, 452 F.3 at 1199.

[24] According to the relevant "Search Committee Tracking Form," Defendant Cornish participated in the first-level minimum requirements screen and the committee interviews, while Defendant Carman participated in the second-level preference screen and the committee interviews. (Doc. 58 at 55.)

Plaintiff did not pass the preferences screen for this position because his application was not as competitive as those of other applicants. (Doc. 69-32.) Specifically, Defendant Cornish maintained that Plaintiff's responses to supplemental questions were "somewhat cursory" compared to those of the successful candidates. (*Id.*) Additionally, Defendant Cornish claimed that the accurate representation of the degrees an applicant holds is a baseline criterion against which application materials are assessed, and Plaintiff inaccurately claimed in his application for this position that he has a Ph.D. in math. (Doc. 69-1 at 3; Doc. 69-32.) According to Defendant Cornish, this discrepancy contributed to the hiring committee's decision not to interview Plaintiff. (*Id.*; Doc. 58 at 51.) Defendant Carman also testified that the successful applicants provided "much more thoughtful, much more reflective, and much deeper responses to [supplemental] questions than" Plaintiff did, and that the Ph.D. discrepancy affected Plaintiff's eligibility for an interview. (Doc. 58 at 53-54.)

In response to Plaintiff's March 2015 e-mail asking why he was not interviewed for this position, Defendant Cornish referenced the degree-related discrepancy and a statement in Plaintiff's application materials that, according to Defendant Cornish, raised questions about Plaintiff's instructional ability. (Doc. 69-16 at 1-6.) Specifically, Defendant Cornish highlighted the following statement: "[w]ith respect to my teaching experience, I would like to say that teaching math is a real challenge for me and is something that I have always enjoyed greatly." (Doc. 69-16 at 2; *see* Doc. 69-11 at 1.) Defendant Cornish told Plaintiff that the foregoing statement "raise[d] a question about instructional ability because 'it is unclear that you nevertheless succeed at [teaching math] even though you enjoy it very much.'" (Doc. 69-16 at 2.) Defendant Cornish further explained that because "committees are limited to assessing what is submitted . . . the materials [are] very, very important in terms of accuracy and messaging." (*Id.*)

Finally, in a letter misdated "14 October 2013" but written for the benefit of the EEOC's investigation of Plaintiff's first charge of discrimination sometime in October 2015, (Doc. 76 at 30), Defendant Cornish contended that Plaintiff was not interviewed for position 0602431 for the foregoing reasons and also because he was a "good teacher, but . . . not an exceptional one." (Doc. 69-32 at 1.) At his deposition, Defendant Cornish testified that, in forming this opinion, he relied not only on Plaintiff's application materials, but also on Plaintiff's supervisors' opinions of his performance as a part-time instructor. (Doc. 76 at 30.) In light of all of the foregoing, the Court finds that Defendants have proffered several legitimate, nondiscriminatory reasons for failing to interview or hire Plaintiff for position 0602431.

In response, Plaintiff argues that Defendants' stated reasons for declining to interview him for position 0602431 are "unbelievable—pure unadulterated pretext." (Doc. 69 at 28.) More specifically, he argues that Defendants should have known that he did not have a Ph.D. in math from several other sources, including Plaintiff's cover letter, resume, transcripts, and personnel file, as well as Defendants' general knowledge. Plaintiff also asserts that Defendants could have interpreted Plaintiff's statements regarding his teaching ability more favorably by focusing on other aspects of Plaintiff's cover letter. (Doc. 69 at 27.) Plaintiff further argues that he was in fact an exceptional instructor based on his uniformly excellent peer and student reviews. (Docs. 69-18, 69-19.) Finally, Plaintiff argues that his credentials are far superior to those of the successful candidates, and that Mr. Anglin did not even satisfy the minimum requirements for the position because he did not have sufficient teaching experience. (Doc. 69 at 25-26; Doc. 69-36; 69-37 at 2; Doc. 69-38.)

"As a general rule, an employee must proffer evidence that shows each of the employer's justifications [is] pretextual." *Jaramillo*, 427 F.3d at 1310 (citation omitted). However,

[s]omething less than total failure of the employer's defense is sufficient to create a genuine issue of fact when (1) the reasons are so intertwined that a showing of pretext as to one raises a genuine question whether the remaining reason is valid; (2) the pretextual character of one explanation is so fishy and suspicious that a jury could find that the employer (or its decisionmaker) lacks all credibility; (3) the employer offers a plethora of reasons, and the plaintiff raises substantial doubt about a number of them; (4) the plaintiff discredits each of the employer's objective explanations, leaving only subjective reasons to justify its decision; or (5) the employer has changed its explanation under circumstances that suggest dishonesty or bad faith.

*Id.* (citations and quotation marks omitted).

In the present matter, the Court finds that Plaintiff has succeeded in demonstrating a genuine issue of material fact regarding whether Defendant Cornish's contention that he is a "good" but not "exceptional" instructor is pretextual. Specifically, Plaintiff has presented evidence that Defendant Cornish ignored evidence that Plaintiff was an excellent or exceptional instructor, including peer and student reviews and Plaintiff's CNM supervisor Linda Martin's opinion, but relied on evidence that he was merely good, including his general knowledge of Plaintiff's performance as a part-time instructor, and perhaps Defendant Carman's opinion. (Doc. 69-13 at 4; Doc. 76 at 30.) Moreover, Defendant Cornish's testimony establishes that he was not supposed to rely on *any* of this evidence because "applications from internal applicants are screened as if the committee doesn't know the applicants." (Doc. 69-32 at 1.)

The Court also finds that Plaintiff has succeeded in demonstrating a genuine issue of material fact regarding whether his paper credentials were so significantly superior to those of Mr. Anglin that it calls Defendants' decision not to interview him into question. *See Jaramillo*, 427 F.3d at 1308-09 ("[D]ifferences between a plaintiff's qualifications and those of a successful applicant are not sufficient to show pretext" unless the disparity is "overwhelming" or "so glaring as to jump off the page."). Mr. Anglin's highest degree was a master's degree in applied mathematics and his post-secondary teaching experience was limited to two and a half years' work

as a teaching assistant at UNM.[25]  (Doc. 69-35 at 3; Doc. 69-36).  Plaintiff, in addition to having a master's degree in math, has a master's degree in nuclear engineering and a Ph.D. in engineering, as well as over 20 years' post-secondary teaching experience in addition to his experience as a teaching assistant.  (Doc. 69-12 at 1-2.)

However, Plaintiff has failed to present evidence sufficient to demonstrate a genuine issue of material fact regarding whether Defendants' other proffered reasons for failing to hire him were pretextual.  First, Plaintiff's affirmative representation on his application that he has a Ph.D. in math was undisputedly false, and the fact that Defendants knew or should have known it was false does not mean they were required to excuse or ignore the falsity.  Next, it is beyond rational debate that Plaintiff's answers to the supplemental questions on his application for position 0602431 were cursory and considerably less detailed and thoughtful than Mr. Anglin's and Mr. Mundy-Castle's answers.  (*Compare* Doc. 58 at 59 *with* Doc. 69-35 at 3 and Doc. 69-38 at 3.)  Further, Plaintiff has offered no evidence to call into question Defendant Cornish's concerns about Plaintiff's ability to express himself clearly and effectively in light of Plaintiff's unqualified and unclarified statement that "teaching math is a real challenge for me."

Finally, Plaintiff has failed to demonstrate a genuine issue of material fact regarding whether Mr. Anglin satisfied the minimum requirement of two years' teaching experience at the post-secondary level.  Mr. Anglin's application and resume indicate that he had two and a half years' teaching experience as a graduate student at UNM when he applied for position 0602431.  (Doc. 69-35; Doc. 69-36.)  Plaintiff seeks to discount a portion of Mr. Anglin's experience by presenting evidence that some of it was teaching recitation classes, along with Mr. Acuna's

---

[25] This is in contrast to Mr. Mundy-Castle, who had well over a decade of post-secondary teaching experience in addition to his experience as a teaching assistant, (Doc. 69-39 at 2-3), and Mr. McConnell, who had a Ph.D. in applied mathematics and more than two years' post-secondary teaching experience in addition to his experience as a teaching assistant.  (Doc. 69-33.)

testimony that teaching recitation classes is not "equivalent" to "instructional teaching" at the post-secondary level. (Doc. 69-35; Doc. 69-36; Doc. 69-37 at 2.) However, Plaintiff does *not* offer evidence that this alleged lack of equivalency meant that teaching recitation classes could not be counted as "teaching experience at the post-secondary level" within the meaning of the posting for position 0602431.[26]

In sum, the Court finds that there is a genuine issue of material fact as to whether some of Defendants' proffered reasons for not hiring Plaintiff for job number 0602431 are pretextual, but not as to all of the other reasons proffered. Moreover, Plaintiff has failed to argue or demonstrate that any of the exceptional circumstances listed in *Jaramillo* apply. Defendants' proffered reasons are not "so intertwined that a showing of pretext as to one raises a genuine question whether the remaining reason[s are] valid"; the pretextual character of the questionable explanations are not "so fishy and suspicious that a jury could find that [a Defendant] lacks all credibility"; Plaintiff did not raise "substantial doubt" about a "number" of Defendants' reasons; Plaintiff did not discredit all of Defendants' "objective" explanations; and, Plaintiff has not proffered evidence that Defendants "changed [their] explanation under circumstances that suggest dishonesty or bad faith." *Jaramillo*, 427 F.3d at 1310. Thus, and because Plaintiff has failed to proffer evidence that all of Defendants' justifications are pretextual, the Court will grant Defendants' motion for summary judgment on Plaintiff's discrimination claims under the ADEA, Title VII, and the NMHRA based on Defendants' failure to hire him for position 0602431. *Id.*

### Position 0602805

---

[26] Mr. Anglin's description on his resume of how he taught recitation classes certainly sounds like "teaching experience": he "[p]repared presentations of topics"; "[w]rote, prepared and graded quizzes"; and, "[p]rovided feedback via class instruction, office hours and email." (Doc. 69-36.) Plaintiff has presented no evidence to challenge this description.

A hiring committee that included Defendant Cornish declined to interview Plaintiff for position 0602805, for which he applied in January 2016. (Doc. 69-2; Doc, 69-45.) Defendants argue that Plaintiff was interviewed because he did not pass the preferences screen. (Doc. 58 at 8, 69; Doc. 69-42 at 2; Doc. 69-43 at 1.) The listed preferences for this position included a Ph.D. in math. (*Id.*) Mr. McConnell, the successful applicant, has a Ph.D. in applied mathematics, while Plaintiff does not. (Doc. 69-12 at 1; Doc. 69-33 at 3.) That Plaintiff did not pass the preferences screen constitutes a legitimate, non-discriminatory reason for Defendants' decision to not interview him for this position.

Plaintiff argues that this explanation is a pretext for unlawful discrimination by attempting to cast doubt upon Mr. McConnell's eligibility for the position. To that end, Plaintiff argues that Mr. McConnell did not satisfy the minimum requirement for the position of two years' teaching experience at the college level, whereas Plaintiff unquestionably did. (Doc. 69 at 29-30; Doc. 69-44 at 2.) However, Plaintiff has failed to offer sufficient evidence to demonstrate a genuine issue of material fact regarding whether Mr. McConnell satisfied the position's minimum teaching experience requirement. Mr. McConnell's testimony and resume indicate that, as a post-doctoral researcher at UNM from August 2013 to January 2016, he taught math history, Calculus 3, several graduate-level math seminars, and Differential Equations, and that he had six years' experience as a teaching assistant and research assistant at Northwestern University. (Doc. 69-33; Doc. 69-44.) Plaintiff attempts to minimize Mr. McConnell's experience by calculating the number of course hours Mr. McConnell taught, (Doc. 69 at 30), but it is undisputed that the minimum requirement for the job was stated in terms of years, and Plaintiff points to no evidence that "two years' teaching experience" in this context necessarily meant a specific number of course hours' teaching experience.

Additionally, Plaintiff argues that he should have passed the preferences screen regarding position 0602805 because he had high preference scores as to positions 0601542 and 0601976. (Doc. 69 at 29.) For the reasons discussed above regarding Plaintiff's prima facie case of retaliation, this argument is insufficient to show that Defendants' proffered reason is "so incoherent, weak, inconsistent, or contradictory that a rational fact finder could conclude that the reason is unworthy of belief." *Hinds*, 523 F.3d at 1197. In sum, Plaintiff has not submitted evidence from which a reasonable fact-finder could infer that Defendants' reason for not selecting Plaintiff for position 0602805 was pretextual. The Court will therefore grant Defendants summary judgment on Plaintiff's claims of employment discrimination under the ADEA, Title VII, and the NMRA related to this position.

### C. Plaintiff's Fourteenth Amendment Claims under 42 U.S.C. § 1983

In Count XIV, Plaintiff claims that Defendants violated his Fourteenth Amendment right to equal protection by subjecting him to disparate treatment based on his age and national origin.[27] National origin discrimination in public employment runs afoul of the Fourteenth Amendment guarantee of equal protection of the law and gives rise to a cause of action under 42 U.S.C. § 1983. *Ramirez v. Dep't of Corrs., Colo.*, 222 F.3d 1238, 1243 (10th Cir. 2000). However, in the Tenth Circuit, claims of age discrimination in employment are not actionable under Section 1983. *Migneault v. Peck*, 158 F.3d 1131, 1140 (10th Cir. 1998) (ADEA preempts Section 1983 equal protection claims based on age discrimination), *judgment vacated on other grounds*, 528 U.S. 1110 (2000); *Migneault v. Peck*, 204 F.3d 1003, 1004 n.1 (10th Cir. 2000) (reaffirming, on remand,

---

[27] In his complaint, Plaintiff also relies on theories of First Amendment retaliation and a hostile work environment to support his Fourteenth Amendment claims. (Doc. 1 at 24-25.) In the absence of any argument to the contrary in Plaintiff's summary judgment response, the Court concludes that Plaintiff, having agreed to the dismissal of his First Amendment claims and his hostile work environment claims under the ADEA, Title VII, and the NMHRA, does not seek to resurrect these claims via the Fourteenth Amendment in Count XIV.

holding that equal protection clause does not give rise to cognizable claim of age discrimination). The Court will therefore grant Defendants summary judgment on Plaintiff's Fourteenth Amendment claims based on age discrimination in employment.

"In racial discrimination suits, the elements of a plaintiff's case are the same, based on the disparate treatment elements outlined in *McDonnell Douglas*, whether that case is brought under §§ 1981 or 1983 or Title VII." *Drake v. City of Fort Collins*, 927 F.2d 1156, 1162 (10th Cir. 1991)). Accordingly, where a plaintiff's Title VII disparate treatment claim fails, so must his Fourteenth Amendment claim. *Id.* at 1162. In recognition of this principle, the parties rely on the arguments and evidence submitted in relation to Plaintiff's ADEA, Title VII, and NMHRA claims, in support of their respective positions as to whether summary judgment on Plaintiff's Fourteenth Amendment claims is warranted. (Doc. 58 at 21-22; Doc. 69 at 33-34.) As discussed above, Defendants have failed to demonstrate that they are entitled to summary judgment on Plaintiff's ADEA, Title VII, and NMHRA claims arising out of their failure to hire Plaintiff for position 0601542. Thus, the Court will also deny Defendants' motion for summary judgment on Plaintiff's Fourteenth Amendment claims arising out of their failure to hire Plaintiff for this position. Insofar as Plaintiff's Fourteenth Amendment claims are premised on failure to hire Plaintiff for positions 0602431 and 0602805, however, the Court will grant Defendants summary judgment for the reasons stated in the Court's analysis of Plaintiff's ADEA, Title VII, and NMHRA claims.

### D. **Plaintiff's Conspiracy Claims**

In Count XV, Plaintiff claims, pursuant to 42 U.S.C. §§ 1983 and 1985(3), that Defendants, acting under color of state law, "became significantly involved and intertwined in a concerted effort to" exclude him from consideration for a full-time math instructor position in violation of his "federal constitutional and statutory rights and those rights and privileges secured by New

Mexico statute, common law, and applicable CNM policies and procedures." (Doc. 1 at 25-26.) To establish a conspiracy claim under Section 1983, a plaintiff must prove that the defendants, acting under color of state law, reached an understanding to deprive him of a constitutional right, and that he was in fact deprived of such a right. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 151-52 (1970); *see* 42 U.S.C. § 1983 (providing cause of action for the deprivation of "any rights, privileges, or immunities secured by the Constitution and laws" when the deprivation is "under color of any statute, ordinance, custom, or usage, of any State"); *Thompson v. City of Lawrence, Kan.*, 58 F.3d 1511, 1517 (10th Cir. 1995) (to prove a Section 1983 conspiracy claim, plaintiff must prove the existence of a conspiracy and the deprivation of a constitutional right). Section 1985(3), in turn, provides that

> [i]f two or more persons . . . conspire for the purpose of depriving . . . any person . . . of the equal protection of the laws, or of equal privileges and immunities under the laws; . . . [or] cause to be done, any act in furtherance of the object of such conspiracy . . . the party so injured or deprived may have an action for the recovery of damages.

42 U.S.C. § 1985(3). To prevail in a claim of conspiracy under this statute, a plaintiff must prove: "(1) a conspiracy; (2) to deprive the plaintiff of equal protection or equal privileges and immunities; (3) an act in furtherance of the conspiracy; and (4) an injury or deprivation resulting therefrom." *Tilton v. Richardson*, 6 F.3d 683, 686 (10th Cir. 1993). Common to both statutes, then, is the requirement that a plaintiff prove the existence of a conspiracy.

"A conspiracy requires the combination of two or more persons acting in concert." *Salehpoor v. Shahinpoor*, 358 F.3d 782, 789 (10th Cir. 2004). "A plaintiff . . . need not prove that each participant in a conspiracy knew the exact limits of the illegal plan" because "[a]n express agreement among all conspirators is not a necessary element of a civil conspiracy." *Snell v. Tunnell*, 920 F.2d 673, 702 (10th Cir. 1990). However, at a minimum, the plaintiff must show that

there was a single plan whose essential nature and general scope were known to each person alleged to have engaged in the conspiracy. *Id.* "Frequently, a conspiracy must be proven with circumstantial evidence because rarely will there be direct evidence of an express agreement among all the conspirators to conspire." *Id.* at 703 (alterations omitted). "While it is not necessary to provide direct evidence of a formal agreement in order to demonstrate a meeting of the minds, there must be substantial proof of circumstances from which it reasonably follows, or at least may be reasonably inferred, that the conspiracy existed." *World Wide Ass'n of Specialty Programs v. Pure, Inc.*, 450 F.3d 1132, 1141 (10th Cir. 2006); *Adickes*, 398 U.S. at 158 (circumstantial evidence of conspiracy is sufficient to overcome a motion for summary judgment if it supports a reasonable inference that defendants had a "meeting of the minds and thus reached an understanding" related to the object of the conspiracy). However, "[c]onjecture and speculation alone are not sufficient to establish that [a] conspiracy existed." *World Wide Ass'n of Specialty Programs*, 450 F.3d at 1141.

Defendants argue that they are entitled to summary judgment on Plaintiff's conspiracy claims because "[t]here is no evidence in the record of a conspiracy between the individual Defendants nor is there evidence of an overt act in furtherance of the conspiracy and Plaintiff did not experience an injury from the alleged conspiracy." (Doc. 58 at 22.) In their reply, Defendants dismiss as baseless the "arguments that Plaintiff maintains raise[ a]n inference that [Defendants] Cornish, Carman, and Manning conspired to achieve discriminatory and retaliatory hiring," particularly his argument that "responding to EEOC submissions constitutes 'collusion.'" (Doc. 76 at 23.)

Without developing an argument or citing to record evidence, Plaintiff asserts in his response that five "acts" demonstrate the existence of a conspiracy between Defendants Manning,

Cornish, and Carman, namely: (1) Defendant Manning's and Cornish's responses to Plaintiff's EEOC charges, in which they addressed the reasons for Plaintiff's non-selection for the positions at issue (Doc. 69-7; Doc. 69-32; Doc. 69-40); (2) the purported fact that Defendant Carman "allowed [Defendant] Cornish to misconstrue [Plaintiff's] credentials when [Defendant] Carman knew precisely what those credentials were"; (3) "the failures to properly investigate [Plaintiff's] claims of discrimination and retaliation"; (4) "the concerted and unquestioned over-stating of successful candidates' teaching and educational credentials for the purpose of making discriminatory and retaliatory hiring decisions"; and, (5) "the incredible and less-than-coincidental occurrence of Caucasian administrators hiring only Caucasian candidates into full-time math instructor positions." (Doc. 69 at 34.) The Court is not persuaded that the record evidence regarding these alleged acts could support a reasonable inference that Defendants had a meeting of the minds and thus reached an understanding to deprive Plaintiff of the equal protection of the laws.

First, in his response, Plaintiff fails to identify what in Defendant Manning's and Cornish's responses to the EEOC's investigations supports the notion that these Defendants reached an understanding to deprive Plaintiff of his constitutional rights. That the responses contain overlapping content is utterly unremarkable given that, on the evidence currently before the Court, Defendant Manning was not involved in any of the decisions whether to hire Plaintiff and would therefore have had to rely on the information of those who were involved, including Defendant Cornish, in responding to the EEOC's inquiries. (Doc. 58 at 55; Doc. 69-25; Doc. 69-45; Doc. 76 at 28.)

Regarding the second "act" Plaintiff identifies, Plaintiff appears to be referring to the argument, set forth earlier in his response brief, that Defendant Cornish told Ms. Black and

Defendant Carman that Plaintiff had misrepresented his credentials on his application for position 0602431, and Ms. Black and Defendant Carman believed Defendant Cornish even though Plaintiff had correctly stated his credentials elsewhere.[28] However, as the Court has already discussed, the record evidence unequivocally shows that Plaintiff did misrepresent his credentials on his application, and his accurate representations elsewhere did not require Defendants to ignore or excuse the misrepresentation.

Third, as to the propriety of Defendants' investigation of Plaintiff's charges of discrimination, Plaintiff fails to explain how either investigation was so inadequate as to allow a rational trier of fact to infer that the individual Defendants reached an understanding to deprive Plaintiff of his constitutional rights. The record does reflect that Defendant Manning conducted a less extensive investigation of Plaintiff's second EEOC charge than his initial one. (Doc. 69-3 at 2.) However, Defendant Manning testified that the reason for this difference was that the second charge differed from the first only insofar as Plaintiff also raised a claim of retaliation, which he did investigate. (*Id.*) Similarly, for the reasons discussed earlier in this Memorandum Opinion and Order, the record evidence does not support Plaintiff's contention that the individual Defendants so over-stated the qualifications of the successful applicants for the positions at issue that a reasonable factfinder could infer that Defendants agreed to deprive Plaintiff of his rights.

Finally, there are two problems with Plaintiff's last argument in support of the existence of a conspiracy, *i.e.*, that with the exception of Mr. Acuna, Defendant CNM has hired only non-Hispanic whites as full-time math instructors. First, there is Defendant Manning's contention, in a letter to the EEOC, that Defendant CNM hired "five diverse full time faculty" members in the

---

[28] Some of the exhibits on which Plaintiff relies to support this argument are not attached to his response, specifically, pages 33, 34, 38, and 39 of Ms. Black's deposition and pages 51 and 52 of the second volume of Defendant Carman's deposition. (Docs. 69, 69-5, and 69-46.)

Math, Sciences and Engineering Department between mid-2015 and June 2016. (Doc. 69-7 at 1, 6.) Plaintiff attached this letter to his summary judgment response, has not challenged its authenticity, and has offered no evidence to contradict Defendant Manning's contention on this point. Second,

> [i]n order for statistical evidence to create an inference of discrimination, the statistics must ... eliminate nondiscriminatory explanations for the disparity. In other words, a plaintiff's statistical evidence must focus on eliminating nondiscriminatory explanations for the disparate treatment by showing disparate treatment between *comparable* individuals.

*Rea v. Martin Marietta Corp.*, 29 F.3d 1450, 1456 (10th Cir. 1994) (emphasis in original). Plaintiff, however, has failed to eliminate nondiscriminatory explanations for the statistical disparities he identifies, and these disparities thus fail to create an inference of discrimination or conspiracy to discriminate.

In sum, Plaintiff's conspiracy claims are premised on unsupported speculation and conjecture about an agreement among the individual Defendants. *World Wide Ass'n of Specialty Programs*, 450 F.3d at 1141 (speculation and conjecture are insufficient to establish the existence of a conspiracy). To the extent that the record supports them, the "acts" Plaintiff cites would not allow a rational factfinder to conclude that the individual Defendants, through an express or implicit meeting of the minds, conspired to deprive Plaintiff of the rights Sections 1983 and 1985(3) protect. The Court will therefore grant Defendants summary judgment on Plaintiff's conspiracy claims under Sections 1983 and 1985(3) as set forth in Counts XV and XVI of his Complaint.

### E. Plaintiff's Employment Contract Claims

In Count XVII, Plaintiff claims that Defendant CNM breached an implied contract of employment with him by violating its policies and procedures governing hiring, promotions, full-

time employment, prohibitions against workplace discrimination, formal investigation of complaints, protection of due process rights, departmental investigations, and retaliation.[29] (Doc. 1 at 27-29.) In Count XIX, Plaintiff claims that Defendant CNM breached the implied covenant of good faith and fair dealing inherent in every contract by relying on illegitimate and discriminatory considerations in deciding not to hire him as a full-time math instructor. (Doc. 1 at 31.) Both claims are based on the theory that the policies and procedures set forth in CNM's Employee Handbook give rise to an implied employment contract. (Doc. 69 at 36; Doc. 69-6; Doc. 69-17.)

Under New Mexico law, "a personnel manual gives rise to an implied contract if it controlled the employer-employee relationship and an employee could reasonably expect his employer to conform to the procedures it outlines." *Garcia v. Middle Rio Grande Conservancy Dist.*, 1996-NMSC-029, ¶ 11, 918 P.2d 7, 11; *see Collado v. City of Albuquerque*, 2002-NMCA-048, ¶ 26, 45 P.3d 73, 78 (City of Albuquerque beached implied employment contract by failing to provide plaintiff with a fair promotional process). Whether an implied employment contract exists, and whether a party has breached such a contract, are generally questions of fact. *Id.* at 76; *West v. Washington Tru Solutions, L.L.C.*, 2010-NMCA-001, ¶¶ 5-6, 224 P.3d 651, 653.

"[E]very contract in New Mexico imposes the duty of good faith and fair dealing upon the parties in the performance and enforcement of the contract." *WXI/Z Sw. Malls v. Mueller*, 2005-NMCA-046, ¶ 25, 110 P.3d 1080, 1087. This "requires that neither party do anything that will injure the rights of the other to receive the benefit of their agreement." *Id.* "Denying a party its rights to those benefits will breach the duty of good faith[.]" *Id.* at ¶ 25, 110 P.3d at 1087-88. To prevail on a claim that a defendant has breached its duty of good faith and fair dealing, the plaintiff

---

[29] Plaintiff also alleges that Defendant CNM breached policies and procedures regarding harassment and hostile work environment; however, as noted above, Plaintiff has abandoned his claims on these bases. (Doc. 69 at 1.)

must show bad faith or the defendant's wrongful and intentional use of the contract to his detriment. *Id.* at ¶ 25, 110 P.3d at 1087.

In its summary judgment motion, Defendant CNM argues that there is no evidence Plaintiff was promised a position as a full-time math instructor or reasonably expected Defendant to select him to fill such a position. (Doc. 58 at 25-26; Doc. 76 at 24-25.) In its reply, Defendant adds that "Plaintiff has failed to establish with admissible evidence, that any policies and procedures were not followed." (Doc. 76 at 25.) Notably, however, Defendant does *not* dispute that its Employee Handbook gave rise to an implied employment contract. (Doc. 58 at 25-27; Doc. 76 at 24-25.) In response to Defendant's arguments, Plaintiff contends that Defendant has misconstrued his claims as arising from an oral or written promise to hire when, in fact, the claims are premised on Defendant's alleged violation of "policies and procedures related to job vacancies, hiring of the best qualified candidate, preferential treatment of internal candidates, affirmative action, and equal opportunity." (Doc. 69 at 36.) Plaintiff also argues that because Defendant has failed to address these policies and procedures, summary judgment is not warranted, and Plaintiff need not respond in greater detail to this portion of Defendants' Motion. (Doc. 69 at 36-38.)

As to Plaintiff's claims that Defendant CNM breached the implied covenant of good faith and fair dealing, Defendant asserts that it is entitled to summary judgment because there is no evidence that it "acted in bad faith or 'wrongfully or intentionally' to the detriment of Plaintiff." (Doc. 58 at 26.) Again, however, Defendant did not develop any argument or provide any citations to the record to support its assertion. (*Id.*) And again, in light of Defendant's cursory briefing, Plaintiff provided no substantive response to Defendant's motion as to this claim. (Doc. 69 at 38.)

It is well established that on a motion for summary judgment, the initial burden is on the movant to show that there is an absence of a genuine issue of material fact. *Celotex Corp.*, 477

U.S. at 323. To satisfy this initial burden, the moving party must inform the Court of the basis for its motion and identify evidence in the record, if any, that demonstrates the absence of a genuine issue of material fact. *Id.* While the movant is not required to support its motion with materials negating the nonmovant's claim, it must, at least, demonstrate that the standards set forth in Federal Rule of Civil Procedure 56(c) are satisfied. *Celotex Corp.*, 477 U.S. at 323. Thus, it is incumbent on Defendant CNM, the movant, to demonstrate that there is insufficient evidence to demonstrate a genuine material factual dispute as to Plaintiff's contract claims, or that Plaintiff cannot present admissible evidence to support the essential elements of those claims. Fed. R. Civ. P. 56(C). "It is not enough to move for summary judgment without supporting the motion in any way or with a conclusory assertion that the plaintiff has no evidence to prove his case." *Celotex Corp.*, 477 U.S. at 328. Here, Defendant CNM has asserted, but has made no effort to demonstrate, that it is entitled to summary judgment on Plaintiff's contract-based claims. The Court will accordingly deny its motion for summary judgment as to these claims.

### F.  Plaintiff's NMWPA Claims

The NMWPA prohibits a public employer from taking any retaliatory action against a public employee because the employee communicates to the employer or a third party about an act or failure to act that the employee believes in good faith is unlawful or improper. N.M. Stat. Ann. § 10-16C-3(A). In Count XVIII of his Complaint, Plaintiff claims that Defendant CNM violated the NMWPA by retaliating against him for opposing unlawful discrimination.[30] (Doc. 1 at 29-30.) Plaintiff and Defendant both rely exclusively on the arguments and evidence that they submitted regarding Plaintiff's ADEA, Title VII, and NMHRA retaliation claims in support of their respective positions as to whether summary judgment is warranted on Plaintiff's NMWPA

---

[30] In his summary judgment response, Plaintiff limits his NMWPA claim to Defendant CNM's failure to hire him for position 0602805. (Doc. 69 at 36; see Doc. 69-2.)

claim. (Doc. 58 at 25; Doc. 69 at 36.) The Court has already addressed those arguments, and having concluded that Plaintiff failed to show a genuine issue of material fact on his retaliation claim for position 0602805, grants Defendant CNM summary judgment on Plaintiff's NMWPA claim, as well. *See Lobato,* 733 F.3d at 1297 (granting summary judgment in defendant's favor on plaintiff's NMWPA claim where the evidence and arguments plaintiff relied on for that claim were identical to those he relied on to support his non-viable Title VII retaliation claim).

### G. **The Individual Defendants' Qualified Immunity Argument**

Finally, Defendants Manning, Cornish, and Carman argue that they are entitled to qualified immunity from Plaintiff's Fourteenth Amendment claims brought under 42 U.S.C. § 1983. (Doc. 58 at 23.) Qualified immunity attaches when an official's conduct "does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Mullenix v. Luna*, 577 U.S. —, 136 S.Ct. 305, 308 (2015); *Wilson v. Layne*, 526 U.S. 603, 609 (1999). When a defendant asserts a qualified immunity defense in a motion for summary judgment, the plaintiff bears the burden of demonstrating that the defendant violated his constitutional or statutory right and that the right was clearly established at the time of the alleged unlawful act. *Cox v. Glanz*, 800 F.3d 1231, 1245 (10th Cir. 2015). To be "clearly established" at the time of the challenged conduct, the contours of the right must have been so well-settled that "every reasonable official would have understood that what he is doing violates that right." *Reichle v. Howards,* — U.S. —, 132 S. Ct. 2088, 2093 (2012). "We do not require a case directly on point, but existing precedent must have placed the statutory or constitutional question beyond debate." *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011). Moreover,

> "clearly established law" should not be defined at a high level of generality, but must instead be "particularized" to the facts of the case. Otherwise, [p]laintiffs would be able to convert the rule of qualified immunity . . . into a rule of virtually unqualified liability simply by alleging violation of extremely abstract rights.

43

*White v. Pauly*, — U.S. —, 137 S.Ct. 548, 552 (2017) (internal quotations omitted). In other words, qualified immunity protects "'all but the plainly incompetent or those who knowingly violate the law.'" *Al-Kidd*, 563 U.S. at 741.

As discussed earlier in this Memorandum Opinion and Order, Plaintiff has demonstrated a genuine issue of material fact as to whether the failure to hire him for position 0601542 was discriminatory. "[T]he general notion that one cannot discriminate on the basis of . . . national origin is clearly established." *Ramirez*, 222 F.3d at 1243-44. This protection "includes relief from discriminatory employment practices of public employers." *Poolaw v. City of Anadarko, Okla.*, 660 F.2d 459, 462 (10th Cir. 1981). The Tenth Circuit has recognized that the Fourteenth Amendment right of equal protection is violated where, on the basis of national origin, a public employer denies an employee a supervisory position or the opportunity to assume a lead role, *Ramirez*, 222 F.3d at 1243-44, and where, on the basis of race, a public employer deprives an employee of the same employment rights and benefits afforded to Caucasians. *Poolaw*, 660 F.2d at 461-62. Although the precise circumstances of this case are of course unique, they are similar enough to the foregoing examples that, construing the evidence in Plaintiff's favor, "every reasonable official would have understood that what he is doing violates [Plaintiff's] right[s]" under the Fourteenth Amendment. *Reichle,* 132 S. Ct. at 2093. In short, it is beyond debate that discrimination on the basis of race or national origin in the context of public employment violates the Fourteenth Amendment. *Ashcroft*, 563 U.S. at 741.

However, to refute the individual Defendants' defense of qualified immunity, Plaintiff must also show that each individual Defendant participated in the violation of his constitutional or statutory rights. *Cox*, 800 F.3d at 1245. In this Plaintiff has had more mixed success. The undisputed record evidence indicates that only Defendant Carman participated in the hiring

process for position 0601542, though he did not participate in the portion of the process at which Plaintiff was rejected; and, only Defendant Cornish participated in the hiring process for position 0601976. (Doc. 69-25; Doc. 76 at 28.) More specifically, as to position 0601542, Defendant Carman participated in the minimum requirements screen, which Plaintiff successfully passed, and as to position 0601976, Defendant Cornish selected the successful candidate from those the hiring committee forwarded for his consideration. (Doc. 69-2; Doc. 69-7 at 4; Doc. 69-25; 69-29 at 4-5; Doc. 76 at 28.) There is no evidence that Defendant Manning participated in either hiring decision at all. In these circumstances, Plaintiff has failed to show any evidence that either Defendant Carman or Defendant Manning "violated [his] constitutional right," whether clearly established or not. *Cox*, 800 F.3d at 1245. The Court will therefore grant the motion of Defendants Carman and Manning for qualified immunity as to Plaintiff's Section 1983 claims against them. For the reasons discussed below, the Court will reserve ruling on Defendant Cornish's motion for qualified immunity as to those claims insofar as they are based on Defendant Cornish's failure to hire Plaintiff for position 0601976.

## IV.  SUMMARY JUDGMENT MAY BE WARRANTED ON PLAINTIFF'S REMAINING CLAIMS RELATING TO POSITION 0601976

Defendants do not mention position 0601976 in their summary judgment motion. *See generally* Doc. 58. Instead, they seek summary judgment on Plaintiff's claims relating to this position for the first time in their reply. As grounds, Defendants first argue that the Court should grant them summary judgment on all of Plaintiff's statutory employment discrimination claims based on position 0601976 for failure to exhaust administrative remedies. On the substance of these as well as Plaintiff's Fourteenth Amendment Equal Protection claim, Defendants make little effort to defend their decision not to hire Plaintiff for position 0601976, or to meet their initial summary judgment burden of demonstrating no genuine issue of material fact. Nonetheless,

between Plaintiff's response addressing this position, Defendants' reply, and the record evidence, it appears to the Court that summary judgment may be warranted. The Court therefore sets forth its analysis identifying material facts that may not be genuinely in dispute and grants Plaintiff an opportunity to file a surreply pleading within twenty days of entry of this Memorandum Opinion and Order addressing Defendants' untimely summary judgment motion and the Court's analysis herein. *See also* Fed. R. Civ. P. Rule 56(f).

Regarding Defendants' argument that the Court should grant them summary judgment on all of Plaintiff's statutory employment discrimination claims based on position 0601976 for failure to exhaust administrative remedies, the record evidence appears to demonstrate that Plaintiff in fact did not file a charge of discrimination concerning, relating to, or addressing this position. As such, Defendants have satisfied their initial burden of demonstrating entitlement to summary judgement on Plaintiff's ADEA, Title VII and NMHRA discrimination claims related to position 0601976. Plaintiff's response should address whether genuine issues of material fact exist which would preclude judgment as a matter of law in Defendants' favor on these claims for failure to exhaust administrative remedies.

Plaintiff need not exhaust administrative remedies to pursue his Fourteenth Amendment national origin discrimination claims based on Defendants' failure to hire him for position 0601976.[31] Because the *McDonnell* Douglas analysis that applies to Plaintiff's Section 1983 claim is the same for his statutory discrimination claims, should summary judgment be warranted on the merits of the former, Plaintiff's Title VII, ADEA and NMHRA claims must also fail. *Drake*, 927 F.2d at 1162. As previously discussed, to establish a prima facie case of employment

---

[31] Plaintiff's age discrimination claim regarding position 0601976 is no more actionable under Section 1983 than those involving the other jobs at issue for which the Court has already granted summary judgment herein. The Court thus limits its discussion here to Plaintiff's only cognizable theory of recovery.

discrimination based on national origin, a plaintiff must show that: (1) he belongs to a suspect class; (2) he suffered an adverse employment action; (3) he was qualified for the position at issue; and, (4) he was treated less favorably than others not in the protected class. *Sanchez*, 164 F.3d at 531-32; *Garrison*, 428 F.3d at 937.

Plaintiff has presented sufficient evidence to establish a prima facie case of national origin discrimination regarding position number 0601976. First, Plaintiff belongs to a suspect class under the Fourteenth Amendment because his national origin is Spanish and his self-identified cultural origins are Mexican. *Lobato v. New Mexico Env't Dep't, Envtl. Health Div.*, 838 F. Supp. 2d 1213, 1223 (D.N.M. 2011) (applying Equal Protection Clause to plaintiff's employment discrimination claims based on Hispanic "race/national origin," noting that "suspect classifications include those based on race, alienage, and national origin"). Second, Defendants' failure to hire Plaintiff for position 0601976 was an adverse employment action. (*See generally* Docs. 58, 76.) Third, Plaintiff has presented sufficient evidence to demonstrate that he met the minimum objective qualifications for the position. (Doc. 69-29 at 5.) Finally, Plaintiff has presented sufficient evidence to show a genuine issue of material fact regarding whether he was treated less favorably than others not in the protected class. Specifically, Plaintiff has presented evidence that Defendants rejected his application for position 0601976 in favor of David Blankenbaker, a non-Hispanic white applicant.[32] (Doc. 69-27 at 2; 69-29 at 5; Doc. 69-31; Doc. 69-47.)

---

[32] There is record evidence that, after Mr. Blankenbaker declined to accept the position for personal reasons, Defendant Cornish decided to close it, *i.e.*, not to hire any other applicant to fill it. (Doc. 69-29 at 4-5.) However, the position was necessarily still open when Defendants rejected Plaintiff in favor of Mr. Blankenbaker. Moreover, the record does not conclusively demonstrate whether this full-time math instructor position was, essentially, the same position Defendant CNM later filled as position number 0602431. Mr. Blankenbaker's recommended start date for position number 0601976 would have been August 25, 2014, and Defendant CNM posted position number 0602431 on December 5, 2014. (Doc. 69-26 at 1; Doc. 69-34 at 2.)

Defendants identify Defendant Cornish's statement that "Plaintiff was 'not-competent-enough-to-be-a-full-time-instructor,'" as a basis for not hiring him for the position. (Doc. 76 at 19.) They also incorporate their arguments regarding position 0601542 "insofar as they apply."[33] (*Id.*) In so doing, the Court believes Defendants are asserting that they failed to hire Plaintiff for this position because he did not perform well at his interviews. (*See* Doc. 69-37 at 2.) As such, Defendants have articulated legitimate, nondiscriminatory reasons for failing to hire Plaintiff for position number 0601976, thereby shifting the burden back to Plaintiff to demonstrate that the proffered reasons are pretextual under the *McDonnell Douglas* framework. *McDonnell Douglas Corp.*, 411 U.S. at 804.

Plaintiff bears the ultimate burden of persuading the trier of fact that Defendants intentionally discriminated against him. The Court's review of the record demonstrates that nine members of the hiring committee participated in his preferences screen and they obviously scored him highly enough to pass him through to the third level interview screen. (Doc. 69-25.) Seven of these eight committee members participated in his interview, yet Plaintiff's overall interview score was quite low, totaling less than half of the 35 points that Mr. Blankenbaker received. (Doc. 69-31.) In fact, Plaintiff received only two points more than the third finalist, Mr. Seffrood, who received only 15 points. (*Id.*) Despite the twenty-point spread between the three finalists, the interview committee nonetheless forwarded Plaintiff and Mr. Seffrood on to Defendant Cornish for his consideration along with Mr. Blankenbaker. (*Id.*) That Defendant Cornish chose Mr. Blankenbaker, who received more than twice the points Plaintiff and Mr. Seffrood received, certainly appears legitimate and reasonable on its face. This significant disparity in interview scores could also reasonably support Defendant Cornish's conclusion that the position should be

---

[33] Defendants' reply brief actually states that "*Plaintiff* incorporates by reference its argument from the preceding section," but this appears to be a typographical error. (Doc. 76 at 19 (emphasis added).)

closed rather than offered to a candidate who scored so much lower. Indeed, Mr. Cornish's deposition testimony appears to bear this out:

> Q.      As of the time that you turned – you shut this pool down with regards to this posting did you believe that [Plaintiff] was not qualified to be a full-time instructor for CNM?
> A.      I believe that he didn't demonstrate the competence we expected in order to offer him a full time position.
> He's qualified in the sense that he passed through the preferences screening and got an interview. But again, we're looking for the most competent candidates. Just on paper qualifications don't necessarily indicate competence.

(Doc. 69-29 at 5.)

The importance of deference to professional judgment in academic settings is particularly well-established. *See Regents of Univ. of Michigan v. Ewing,* 474 U.S. 214, 225 (1985) ("When judges are asked to review the substance of a genuinely academic decision ... they should show great respect for the faculty's professional judgment. Plainly, they may not override it unless it is such a substantial departure from accepted academic norms as to demonstrate that the person or committee responsible did not actually exercise professional judgment."). "[I]ndividuals and institutions can and will make mistakes in their hiring choices. But evidence of a mistaken or poorly informed employment decision is not, standing alone, suggestive of a discriminatory motive on the part of an employer." *Hamilton v. Okla. City Univ.*, 563 F.App'x 597, 604 (10th Cir. 2014). "[A] challenge of pretext requires [the Court] to look at the facts as they appear to the person making the decision." *Kendrick v. Penske Transp. Services, Inc.*, 220 F.3d 1220, 1231 (10th Cir. 2000). "To support an inference of pretext, to suggest that something more nefarious might be at play, a plaintiff must produce evidence that the employer did more than get it wrong." *Johnson v. Weld County, Colo.*, 594 F.3d 1202, 1211 (10th Cir. 2010). Plaintiff is directed to file a surreply no later than twenty days after entry of this Memorandum Opinion and Order coming forward with the evidence he relies upon, if any, to demonstrate pretext.

## V. **CONCLUSION**

For reasons stated herein, the Court ORDERS as follows:

(1) Defendants' Motion to Dismiss (Doc. 57) is GRANTED IN PART and DENIED IN PART.

The motion is DENIED AS MOOT as to Plaintiff's Title VII claims against the individual Defendants, and as to Plaintiff's Section 1983 Fourteenth Amendment claims against Defendant Manning in his individual capacity. The motion is GRANTED as to Plaintiff's NMWPA claims against the individual Defendants, and these claims are DISMISSED WITH PREJUDICE. The Court reserves ruling on Defendants' motion seeking dismissal of claims against Defendant Manning pending receipt of Plaintiff's surreply, if any, which must be filed no later than 20 days after entry of this Memorandum Opinion and Order.

(2) Defendants' Motion for Summary Judgment (Doc. 58) is GRANTED IN PART AND DENIED IN PART.

The motion is GRANTED as to: (a) the claims Plaintiff has stipulated cannot survive summary judgment, *i.e.*, his ADEA, Title VII, and NMHRA claims based on hostile work environment, and his Section 1983 First Amendment retaliation claims; (b) Plaintiff's ADEA, Title VII, and NMHRA retaliation claims; (c) Plaintiff's ADEA, Title VII, and NMHRA age and national origin discrimination claims related to positions 0602431 and 0602805; (d) Plaintiff's Section 1983 Fourteenth Amendment age discrimination claim; (e) Plaintiff's Section 1983 Fourteenth Amendment national origin discrimination claim related to positions 0602431 and 0602805; (f) Plaintiff's conspiracy claim under 42 U.S.C. §§ 1983 and 1985(3); (g) Plaintiff's NMWPA claim against Defendant CNM; (h) Plaintiff's Section 1983 Fourteenth Amendment claim as against Defendants Carman and Manning related to positions

0601542 and 0601976; and, (*i*) Plaintiff's Section 1983 Fourteenth Amendment claim as against Defendant Cornish related to position 0601542.

The motion is DENIED as to: (a) Plaintiff's ADEA, Title VII, and NMHRA age and national origin discrimination claims as against Defendants CNM, Cornish, Carman, related to position 0601542; (b) Plaintiff's Section 1983 Fourteenth Amendment national origin discrimination claim as against CNM related to position 0601542; and, (c) Plaintiff's breach of an implied employment contract and breach of the implied covenant of good faith and fair dealing claims.

The Court reserves ruling on Defendants' motion for summary judgment on Plaintiff's ADEA, Title IV, NMHRA and Section 1983 claims related to position 0601976 pending receipt of Plaintiff's surreply if any, which must be filed no later than 20 days after entry of this Memorandum Opinion and Order addressing whether he has exhausted administrative remedies.

**IT IS SO ORDERED.**

_____
**KIRTAN KHALSA**
**United States Magistrate Judge**